FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 14, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| ERICA DAVIS, as Personal Representative of the Estate of Andrew Davis, deceased, minor child JC, and minor child SD,<br><br>     Plaintiffs,<br><br>and<br><br>MICHAEL M. MASCHMEYER, as Personal Representative of the Estate of R. Wayne Estopinal, deceased,<br><br>     Plaintiff,<br><br>and<br><br>JAMES JOHNSON and BRADLEY HERMAN, individually and as Independent Co-Administrators of the Estate of Sandra Johnson, deceased,<br><br>     Plaintiffs,<br><br>  v.<br><br>TAMARACK AEROSPACE GROUP, INC.,<br><br>     Defendant. | NO:  2:20-CV-60-RMP<br>   2:20-CV-61-RMP<br>   2:20-CV-62-RMP<br><br>ORDER DENYING DEFENDANT TAMARACK'S MOTIONS TO DISMISS |

BEFORE THE COURT are Defendant Tamarack Aerospace Group, Inc.'s ("Tamarack's") Second Motions to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) in the above-captioned matters. ECF No. 24 in Case No. 20-cv-60-RMP; ECF No. 24 in Case No. 20-cv-61-RMP; and ECF No. 22 in Case No. 20-cv-62-RMP. The Court has heard oral argument from the parties and has reviewed the parties' filings, including the supplemental briefing filed by the parties following oral argument, in addition to the remaining record and the relevant law. Accordingly, the Court is fully informed.

## CONSOLIDATION

As a preliminary matter, the Court notes that the parties agree that the three cases arising out of the airplane crash discussed herein, Case Nos. 20-cv-60-RMP, 20-CV-61-RMP, and 20-CV-62-RMP, should be consolidated for discovery, motions, pretrial, and liability trial purposes. ECF No. 50 in Case No. 20-cv-60-RMP. The parties anticipate seeking separate damage trials and plan to select one Plaintiff to proceed to trial on damages and liability contemporaneously. *See id.* Accordingly, the Court designates the first filed case, *Davis v. Tamarack*, Case No. 20-cv-60-RMP, as the lead case, the docket on which all docket entries will be consolidated, and the docket on which all future filings will be made, to eliminate the need for filing pleadings in triplicate. *See* ECF No. 50 in Case No. 20-cv-60-RMP. Accordingly, the following order resolves the pending Motions to Dismiss in all three cases, ECF No. 24 in Case No. 20-cv-60-RMP; ECF No. 22 in 20-CV-61-

RMP; and ECF No. 24 in 20-CV-62-RMP, but cites only to the filings in Case No. 20-cv-60-RMP, unless otherwise noted.

## BACKGROUND

Around March 26, 2018, the Federal Aviation Administration ("FAA") approved an application to install Tamarack ATLAS Winglets, a load alleviation system also known as the Tamarack Active Winglets system ("Winglets"), on a Cessna model 525A, airframe serial number 525A0449 ("Subject Airplane").  ECF No. 20 at 5.  Tamarack allegedly installed the Winglets on the Subject Airplane on approximately May 28, 2018, "pursuant to and in accordance [sic] FAA Import Supplemental Type Certificate No. SA03842, including all limitations and conditions applicable thereto."  ECF No. 20 at 6.[1]

According to the Amended Complaint, Defendant Tamarack is a Washington company with its principal place of business in Sandpoint, Idaho.  ECF No. 20 at 2.

---

[1] At the oral argument hearing in this matter, the Court granted in part Defendant's request for judicial notice of the Special Conditions that the FAA issued with respect to the Subject Airplane based on the Amended Complaints' general reference to those conditions.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705−06 (9th Cir. 1998); *see also* ECF No. 16.  However, the Court took judicial notice only of the fact that the FAA issued the Special Conditions, which was undisputed, but did not take judicial notice of the contents of the documents submitted by Defendant purporting to contain those Special Conditions, as Defendant did not lay a sufficient foundation and did not show that the contents of the documents were beyond reasonable dispute.  *See* Fed. R. Evid. 201.

On November 30, 2018, Andrew Davis, R. Wayne Estopinal, and Sandra Johnson were passengers on the Subject Airplane, flying from Clark County Regional Airport in Sellersburg, Indiana, with an intended destination of Chicago Midway International Airport in Chicago, Illinois.  The plane crashed in Indiana, and all three passengers were killed.  *Id.*  Plaintiffs Ms. Davis and Mr. Maschmeyer are residents of Indiana, as were the decedents whose estates they represent.  ECF Nos. 20 at 2 in Case No. 20-cv-60-RMP; 21 at 2 in Case No. 20-cv-61-RMP.  Plaintiffs Mr. Johnson and Mr. Herman are residents of Louisiana as was decedent Ms. Johnson whose estate they represent.  ECF No. 19 at 2 in Case No. 20-cv-62-RMP.

On March 5, 2020, the Estates of the three individuals filed separate wrongful death lawsuits against Defendant Tamarack and former Defendant Cranfield Aerospace Solutions Limited alleging product liability claims.

In Amended Complaints filed on June 15, 2020, Plaintiffs allege the following causes of action against Defendant Tamarack: (1) a wrongful death claim under Washington's product liability statute, Revised Code of Washington ("RCW") § 7.72.010; and (2) a survival damages claim under RCW § 4.20.046.  ECF No. 20.

Plaintiffs allege in their first count that the Winglets installed on the Subject Airplane were not reasonably safe in violation of Washington's product liability statute, RCW 7.72.010, "because adequate warnings or instructions were not provided including in one or more of the following particular manners:

(a) The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the controllability and maneuverability requirements of 14 C.F.R. Part 23, Subpart D are met within a practical operational flight envelope, contrary to and in violation of FAA Special Condition SC 23.672(d)(1);

(b) The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the trim, stability, and stall characteristics are not impaired below a level needed to permit continued safe flight and landing, contrary to and in violation of FAA Special Condition SC 23.672(d)(2);

(c) The load alleviation system failed to comply with the requirement that proper precautions be taken to prevent inadvertent or improper operation of the load alleviation system, contrary to and in violation of FAA Special Condition SC 23.677(a);

(d) The load alleviation system failed to comply with the requirement that the airplane be safely controllable and a pilot be able to perform all maneuvers and operations necessary to affect a safe landing following any load alleviation system runaway not shown to be extremely improbable, contrary to and in violation of FAA Special Condition SC 23.677(d);

(e) The load alleviation system failed to comply with the requirement that during operation the flight control system and load alleviation system were free from excessive deflection, contrary to and in violation of FAA Special Condition SC 23.683(a)(3);

(f) The load alleviation system failed to comply with the requirement that the rate of movement of the control surface in response to the load alleviation system controls must give satisfactory flight and performance characteristics under steady and changing conditions of airspeed, engine power, attitude, flap configuration, speedbrake position, and during landing gear extension and retraction, contrary to and in violation of FAA Special Condition SC 23.697(b);

(g) The design of the load alleviation system failed to comply with the requirement that the occurrence of any failure of the system that would result in an unsafe flight characteristic of the airplane is extremely improbable, contrary to and in violation of FAA Special Condition SC 23.701(a)(2);

(h) The load alleviation system failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(i) The load alleviation system failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(j) The load alleviation system failed to comply with the requirement that after any single failure of the load alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(k) The load alleviation system failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a); and/or

(l) The load alleviation system otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(m) the subject Tamarack Active Winglets system was not reasonably safe as designed under RCW 7.72.030(1)(a) because at the time of manufacture, the likelihood that the product would cause claimants harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendants to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

(n) the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions for the system were not provided under RCW 7.72.030(1)(b) because at the time of the manufacture, the likelihood that the product would cause the claimants harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

(o) the subject Tamarack Active Winglets system was not reasonably safe under RCW 7.72.030(3), and the subject system's warnings and instructions were not reasonably safe under RCW 7.72.030(3) as its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

(p) the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system was manufactured under RCW 7.72.030(1)(c). Defendants learned or should have learned about a danger connected with the product after it was manufactured. Defendants failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances.

(q) the subject Tamarack Active Winglets system was not reasonably safe in construction under RCW 7.72.030(2) for which Defendants, and each of them, are strictly liable because the product did not conform to the manufacturer's express warranty and did not conform to the implied warranties under Title 62A RCW.

(r) The load alleviation system failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(s) The load alleviation system failed to comply with the requirement that it be designed to account for unsymmetrical loads resulting from flight with the engines on one side inoperative or at reduced power, contrary to and in violation of Special Condition SC 23.701(c);

(t) The load alleviation system failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(u) The load alleviation system failed to comply with the requirement that after any single failure of the load alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(v) The load alleviation system failed to comply with the requirement that it must permit counteraction of failures without requiring exceptional pilot skill or strength by either deactivation of the system or by overriding, contrary to and in violation of FAA Special Condition SC 23.672(b);

(w) The load alleviation system failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a);

(x) The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.675 requiring the control system to include a mechanism to positively limit the range of motion and that these mechanisms not adversely affect safety of flight contrary to and in violation of Special Condition 23.

(y) The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.681in that the testing was not performed at the most severe loading and therefore the structure is not constructed to withstand the most sever loading contrary to and in violation of Special Conditions

(z) The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.693in that the certain joints subject to angular motion be designed

to a specified factor of safety contrary to and in violation of Special Conditions;

(aa) The load alleviation system failed to comply with the requirement that it be designed taking into consideration all conditions that could be encountered up to the point where the limit load is reached including but not limited to the effect of nonlinearities must be investigated beyond limit conditions to ensure the behavior of the system presents no anomaly compared to the behavior below limit conditions contrary to and in violation of Special Conditions 2(e)(1);

(bb) load alleviation system failed to comply with the requirement that it be designed to meet the aeroelastic stability requirements of § 23.629 contrary to and in violation of Special Conditions 2(e)(3);

(cc) The load alleviation system otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(dd) the subject Tamarack Active Winglets system was not reasonably safe as designed under RCW 7.72.030(1)(a) because at the time of manufacture, the likelihood that the product would cause claimants harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendants to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

(ee) the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions for the system were not provided under RCW 7.72.030(1)(b) because at the time of the manufacture, the likelihood that the product would cause the claimants harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

(ff) the subject Tamarack Active Winglets system was not reasonably safe under RCW 7.72.030(3), and the subject system's warnings and

instructions were not reasonably safe under RCW 7.72.030(3) as its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

(gg) the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system was manufactured under RCW 7.72.030(1)(c). Defendants learned or should have learned about a danger connected with the product after it was manufactured. Defendants failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances.

(hh) the subject Tamarack Active Winglets system was not reasonably safe in construction under RCW 7.72.030(2) for which Defendants, and each of them, are strictly liable because the product did not conform to the manufacturer's express warranty and did not conform to the implied warranties under Title 62A RCW."

ECF Nos. 21 in the *Maschmeyer* Amended Complaint, Case No. 20-cv-61-RMP, and 19 in the *Johnson* Amended Complaint, Case No. 20-cv-62-RMP (alleging the above 34 dangerous conditions); *but see* ECF No. 20 in the *Davis* Amended Complaint, ECF No. 20 in 20-cv-60-RMP (alleging seventeen dangerous conditions).

Plaintiffs continue that "[o]n November 30, 2018[,] and as a direct and proximate result of one or more of the foregoing conditions of the Subject Tamarack Active Winglets system that were not reasonably safe, the Subject Airplane was caused to and did deviate from controlled flight and crashed into trees and the ground in Clark County, Indiana, causing" Plaintiffs' decedents to suffer personal injuries resulting in their deaths. *See* ECF No. 20 at 12.

ORDER DENYING DEFENDANT TAMARACK'S MOTIONS TO DISMISS ~ 10

In the second cause of action that Plaintiffs raise against Tamarack, Plaintiffs seek to recover pre-death damages pursuant to the survival of actions under Washington law, in RCW §§ 4.20.046 and 4.20.060.   ECF No. 20 at 12.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## DISCUSSION

### *Preemption*

Defendant argues that Plaintiffs' design defect claims are preempted by the FAA's regulations and Special Conditions concerning the Winglets, which

Defendant argues provide the exclusive duty standard governing the Winglets.  ECF No. 35 at 6.

Plaintiffs argue that the presumption against conflict (frustration) preemption applies because product liability claims are traditionally a matter of state law.  *See* ECF No. 48 at 3−4.  Plaintiffs emphasize that it is significant that there is no express preemption clause in the Federal Aviation Act.  *Id.* at 3 (citing *Wyeth v. Levine*, 555 U.S. 555, 574 (2009) ("[Congress's] silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend [Food and Drug Administration] oversight to be the exclusive means of ensuring drug safety and effectiveness.").  Plaintiffs argue that the Act's savings clause preserves remedies, and the United States Court of Appeals for the Ninth Circuit has found the clause to be evidence that a state law tort claim against an air carrier did not frustrate a federal objective.  *Id.* at 6 (citing *Gilstrap v. United Airlines, Inc.*, 709 F.3d 995, 1008−09 (9th Cir. 2013)).  Plaintiffs also argue that the minimum standards clause, which authorizes the FAA to enact minimum standards for aviation safety, further indicates that preemption was not intended.  *Id.*

Under the Supremacy Clause of the United States Constitution, "Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  State law can be preempted by federal law under three circumstances.  *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990).  Congress may expressly provide for preemption by explicitly defining "the extent to which its

enactments pre-empt state law." *English*, 496 U.S. at 78.  State law also can be preempted where "Congress intends federal law to occupy the field."  *Crosby*, 530 U.S. at 372.   Finally, courts may find implied conflict preemption when federal statutes conflict with state law.  *Id.*; *Gilstrap*, 709 F.3d at 1008.  Implied conflict preemption occurs either where "it is impossible for a private party to comply with both state and federal law" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 373.

The Ninth Circuit repeatedly has held that "the [Federal Aviation Act] does not expressly preempt state regulation of air safety or prohibit states from imposing tort liability for unlawful retaliation or constructive termination," so any preemption under the Federal Aviation Act "'must be implied.'"  *Ventress v. Japan Airlines*, 747 F.3d 716, 720 (9th Cir. Haw. March 28, 2014), *cert. denied*, 135 S. Ct. 164 (2014) (quoting *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007)).  The Ninth Circuit also has noted that other tort claims, such as those based on defective product claims, are not preempted. *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009).  The Federal Aviation Act "itself makes no mention of federal courts developing a federal common law standard of care for airplane personal injury actions, and there is no federal general common law." *Id*. at 811 (internal quotation and citation omitted).

1    Defendant argues that both field preemption and implied conflict preemption

2    by impossibility apply in this case.  *See* ECF No. 52 at 14.

3    Courts apply two presumptions regarding preemption.  *Medtronic, Inc. v.*

4    *Lohr*, 518 U.S. 470, 485 (1996).  First, courts "start with the assumption that the

5    historic police powers of the States were not to be superseded by the Federal Act

6    unless that was the clear and manifest purpose of Congress . . . ."  *Id.*   "[T]he States

7    are independent sovereigns in our federal system," so courts presume "that Congress

8    does not cavalierly pre-empt state-law causes of action."  *Id.*; *see Wyeth*, 555 U.S. at

9    565; *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*

10   *Co.*, 514 U.S. 645, 654−55 (1995).  Second, the "ultimate touchstone" in every

11   preemption case is Congressional purpose and intent.  *Medtronic*, 518 U.S. at 485.

12   "Congressional intent to preempt state law must be clear and manifest."  *Indus.*

13   *Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997); *see also United*

14   *States v. Locke*, 529 U.S. 89, 108 (2000).

15   Defendant asks the Court to dismiss this suit based on a finding that state tort

16   law remedies would impede "the accomplishment and execution of the full purposes

17   and objectives of" the FAA's certification process.  *See* ECF No. 52 at 7; *see*

18   *Crosby*, 530 U.S. at 373.  Defendant also asks the Court to find that impossibility

19   preemption supports dismissal of Plaintiffs' design defect claims.  ECF No. 52 at 14.

20   Defendant argues that Plaintiffs rely on unpersuasive authority from the Third

21

1    Circuit, *Sikkelee v. Precision Airmotive Corp.*,[2] to argue that it is plausible that

2    Defendant was under a duty to design the Winglets more safely or provide different

3    warnings regarding the product. *Id.* at 16−18.  In addition to arising out of a

4    different Circuit's body of law, Defendant argues, *Sikkelee* was a 2-1 opinion that

5    overly relied on *Wyeth*, which address the Food and Drug Administration's

6    regulatory scheme, not the Federal Aviation Act. *Id.*

7        The Court is not persuaded by Defendant's preemption arguments, given the

8    relevant Ninth Circuit authority.  The Ninth Circuit has allowed aviation products

9    liability claims when the subject matter is not pervasively regulated by the Federal

10   Aviation Act. *See Montalvo*, 508 F.3d at 468−69 (finding preemption for state law

11   negligence claims for failure to warn passengers of medical risks accompanying

12   long flights); *Martin*, 555 F.3d at 808−11 (finding that the Federal Aviation Act did

13   not preempt products liability claims for allegedly defective airstairs); *Ventress*, 747

14   F.3d at 721−23 (finding preemption where state law claims implicating pilot

15   qualifications and medical standards because "unlike aircraft stairs, [those matters]

16   are pervasively regulated").  Defendant has not established that pervasive regulation

17   applies to the relevant issues here.  Nor does Defendant support its contentions that a

18   state product liability claim with respect to the Winglets impermissibly interferes

19

20   [2] 907 F.3d 701, 718 (3d Cir. 2018), *reh'g denied* (Dec. 11, 2018), *cert. Denied sub. nom. Avco Corp. v. Sikkelee*, 140 S. Ct. 860 (2020).

21

with the purpose of the FAA certification process or that Defendant could not have designed or warned with respect the Winglets any differently under federal law. As Plaintiffs assert, the Federal Aviation Act establishes only "minimum standards" "for the design, material, construction, quality of work, and performance of aircraft, aircraft engines, and propellers." ECF No. 28 at 7 (quoting 49 U.S.C. § 44701(a)(1)).

Moreover, Defendant has not shown that implied preemption supports dismissal of Plaintiffs' product liability claims at this early stage in the litigation because Plaintiffs ultimately may proceed with their first causes of action even relying on federal authority for the standard of care. *Joseph v. Berkeley Grp., LLC*, 823 F. App'x 472, 473−74 (9th Cir. 2020) ("However, even where federal law pervasively regulates aviation safety, 'the scope of field preemption extends only to the standard of care.'") (quoting *Gilstrap,* 709 F.3d at 1006).

The Court does not find preemption has been established to require dismissal of Plaintiffs' Amended Complaints, in whole or in part. Therefore, the Court denies Defendant's Motions to Dismiss on this ground.

### *Conflict of Laws*

Defendant argues that Plaintiffs' reliance on Washington survival damages presents a conflict of laws issue that requires dismissal of Plaintiffs' second causes of action for survival damages because "Washington has no material nexus with the design or construction or installation of the Winglets in Idaho, or the accident scene in Indiana." ECF No. 35 at 13. However, Defendant acknowledges that "the law-

1   choosing decision is best left to another day and motion." ECF No. 24 at 21–22.

2   Nevertheless, Defendant asks the Court to find that Washington law does not apply

3   in ruling on their Motions to Dismiss. *Id.* at 22.

4        Plaintiffs oppose dismissal of the survival damages cause of action as

5   inappropriate under Fed. R. Civ. P. 12(b)(6). ECF No. 28 at 21. Plaintiffs maintain

6   that the Court's resolution of Defendant's argument that either Indiana or Idaho law,

7   rather than Washington law, applies to Plaintiffs' claim would require the Court "to

8   engage in a fact intensive choice of law analysis that is premature at this time." ECF

9   No. 28 at 21. Plaintiffs seek the opportunity of discovery to develop facts to support

10  the application of Washington law to their claims, and argue that, at this initial stage

11  of the case, neither Plaintiffs nor the Court can fully address the choice of law issue.

12  *Id.*

13       A federal court sitting in diversity follows the forum state's choice of law

14  rules. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009); *Klaxon Co. v.*

15  *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also Sutter Home Winery,*

16  *Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (recognizing that

17  state law tort claims ordinarily are governed by the law of the forum state).

18  Washington federal courts have observed that "'Choice of law is decided on an issue

19  by issue basis' and it is inappropriate for a court to prospectively declare that a

20  particular state's law applies to each and every issue in a 'case before the specific

21  issue is identified.'" *Bayley Constr. v. Wausau Bus. Ins. Co.*, No. C12-1176-RSM,

2012 U.S. Dist. LEXIS 177559, 2012 WL 12874163, at *2 (W.D. Wash. Dec. 19, 2012) (quoting *Newmont USA Ltd. v. Am. Home Assurance*, 676 F. Supp. 2d 1146, 1156 (E.D. Wash. 2009)); *see also Them v. Manhattan Life Assurance Co. of Am.*, No. 19-cv-06034-RBL, 2020 U.S. Dist. LEXIS 149766, at *5-6 (W.D. Wash. Aug. 18, 2020). Courts have recognized that choice of law may be determined through entry of partial summary judgment once the "specific legal issues have been identified." *Them*, 2020 U.S. Dist. LEXIS 149766, at *5-6.

Before engaging in a choice of law analysis, Washington courts ask whether there is an actual conflict between the laws or interests of Washington and the laws or interests of another state. *Erwin v. Cotter Health Centers*, 161 Wash. 2d 676, 692 (2007). An actual conflict exists if the two states' laws produce a different result for the particular issue. *Id*. "[W]here laws or interests of concerned states do not conflict, the situation presents a false conflict and the presumptive local law is applied." *Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 189 Wash. 2d 474, 481 (2017) (internal quotation omitted).

If an actual conflict exists, "in tort, . . . the court applies the two-part most significant relationship test to determine which state's substantive law to apply to the claim." *Woodward v. Taylor*, 184 Wash. 2d 911, 918 (2016). Under the most significant relationship test, the court must determine which state has the most significant relationship to the occurrence and the parties. *Costco Wholesale Corp. v. Nationwide Mut. Ins. Co.*, No. C11-1550 RAJ, 2012 U.S. Dist. LEXIS 134948, at

*5 (W.D. Wash. Sept. 19, 2012) (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 581 (1976) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). The Court must consider: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.*

For the Court to find that Washington law does not apply, as Defendant asks, the Court first would need to find an actual conflict between Washington law and another state, such as Indiana or Idaho, and then find that either Idaho or Indiana has the most significant relationship to the occurrence and the parties. The second inquiry then would require in-depth context that is unavailable at this early stage of the case.

Therefore, he Court finds that the conflict of laws issue raised by Defendant has not yet been fully developed for adjudication and does not present a basis for dismissal under Fed. R. Civ. P. 12(b)(6). The Court finds no compelling reason or any controlling authority supporting Defendant's invitation to bifurcate the conflict of laws issue and decide part of it based on the face of the Amended Complaints and reserve the determination of the choice of law until later in the litigation. Therefore, the Court denies Defendant's Motions to Dismiss on this ground.

/ / /

/ / /

ORDER DENYING DEFENDANT TAMARACK'S MOTIONS TO DISMISS ~ 19

1    *Sufficiency of the Allegations*

2         Defendant seeks dismissal of Plaintiffs' first cause of action, alleging product

3    liability, on the ground that it does not sufficiently state a claim for either a design or

4    manufacturing defect.  Defendant asserts that it is insufficient for Plaintiffs to plead

5    "that a violation of one or more of the 34 distinct regulations may have caused the

6    Subject Airplane [sic]."  ECF No. 24 at 9.  Defendant continues, "This is not

7    sufficient to put Tamarack on notice as to the claims against it.  It is equivalent to

8    alleging, in conclusory fashion, 'Tamarack violated federal aviation law.'"  ECF No.

9    24 at 9.

10         Plaintiffs counter that "because of Tamarack's bankruptcy, Plaintiffs have not

11   had the opportunity to inspect the wreckage or otherwise test the product at issue.

12   The mechanical details of Plaintiffs' claims are best left to development in discovery

13   and expert disclosure."  ECF No. 28 at 20.

14         Washington law generally imposes liability on product sellers for harm caused

15   by defective products only based on negligence, breach of express warranty, or

16   intentional misrepresentation.  RCW § 7.72.030(1); *Johnson v. Recreational Equip.,*

17   *Inc.*, 159 Wn. App 939, 946–47 (Wash. App. 2011).   By contrast, Washington law

18   holds product manufacturers to a higher standard of liability, subjecting them to

19   strict liability for an injury caused by a manufacturing defect or a breach of

20   warranty.  RCW § 7.72.030(2). RCW § 7.72.030(2); *see Johnson*, 159 Wn. App. at

21   946.

ORDER DENYING DEFENDANT TAMARACK'S MOTIONS TO DISMISS ~ 20

To state a product liability claim, a plaintiff must plead non-conclusory allegations that plausibly support (1) a defective design claim; (2) a failure to warn claim; (3) a defective manufacture claim; or (4) a breach of express or implied warranty claim.  RCW § 7.72.030; *see* 16A David K. DeWolf & Keller W. Allen, Wash. Prac., Tort L. & Prac. § 17:8 (4th ed. 2013).  Courts have recognized that discovery is appropriate before expecting a product liability plaintiff to commit to a specific theory of liability.  *See Braden v. Tornier, Inc.*, No. C09-5529RJB, 2009 U.S. Dist. LEXIS 96206, 2009 WL 3188075, at *3 (W.D. Wash. Sept. 30, 2009); *Staub v. Zimmer, Inc.*, No. C17-0508JLR, 2017 U.S. Dist. LEXIS 89109, at *8 (W.D. Wash. June 9, 2017).  However, to survive a motion to dismiss, the complaint must contain sufficient non-conclusory factual allegations to support at least one avenue of relief.  *See Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) ("The problem with the allegation is that it simply tracks the general elements of strict products liability and contains no pertinent factual allegations.").

Plaintiffs allege 34 different ways in which adequate warnings or instructions may not have been provided for the Winglets or in which the Winglets were inadequately designed.  ECF No. 20.  These allegations are "plausibly suggestive of a claim entitling the plaintiff to relief" under a product liability theory of recovery.  *See Moss*, 572 F.3d at 969.  Plaintiffs go beyond making conclusory allegations.  Therefore, the Court finds that the Amended Complaints are sufficient to place Defendant on notice of Plaintiffs' claims and enable Defendant to mount a defense.

As the Court does not find deficient pleading, as Defendant argues, the Court denies Defendant's Motions to Dismiss on this remaining ground.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant Tamarack Aerospace Group, Inc.'s Motions to Dismiss**, ECF No. 24** in Case No. 20-cv-60-RMP; **ECF No. 24** in Case No. 20-cv-61-RMP; and **ECF No. 22** in Case No. 20-cv-62-RMP, are **DENIED**.

2.    Pursuant to the parties' stipulation, ECF No. 50, the Court directs the District Court Clerk to consolidate the dockets for Case Nos. 20-cv-60-RMP, 20-CV-61-RMP; and 20-CV-62-RMP.  The Court further designates the first-filed case in the above-captioned matter, *Davis v. Tamarack*, Case No. 20-cv-60, as the lead case, the docket on which all docket entries will be consolidated, and the docket on which all future filings will be made, to eliminate the need for triplicate filings.  *See* ECF No. 50 in Case No. 20-cv-60-RMP.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** January 14, 2021.

       *s/ Rosanna Malouf Peterson*
       ROSANNA MALOUF PETERSON
       United States District Judge

ORDER DENYING DEFENDANT TAMARACK'S MOTIONS TO DISMISS ~ 22